[Cite as *State v. Townsend*, 2021-Ohio-2702.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2020-CA-49 |
| | : | |
| v. | : | Trial Court Case No. 2020-CR-694 |
| | : | |
| KAREN M. TOWNSEND | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 6th day of August, 2021.

. . . . . . . . . . .

MARCY A. VONDERWELL, Atty. Reg. No. 0078311, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, Appellate Division, 61 Greene Street, 2nd Floor, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee

BRYAN S. HICKS, Atty. Reg. No. 0065022, P.O. Box 359, Lebanon, Ohio 45036
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

**{¶ 1}** Karen M. Townsend pled guilty in the Greene County Court of Common Pleas to identity fraud, petty theft, escape, and trespass into a habitation when a person is present or likely to be present. At sentencing, the trial court imposed 22 months in prison. Townsend appeals from her conviction.

**{¶ 2}** For the following reasons, the trial court's judgment will be affirmed.

## I.     Facts and Procedural History

**{¶ 3}** On May 13, 2020, Townsend was caught shoplifting at Walmart. Throughout the investigation, Townsend portrayed herself to be Stevie Gabbard. Townsend was issued a summons to appear in the Fairborn Municipal Court under the name Stevie Gabbard on one count of theft and one count of possession of criminal tools. Fingerprint cards were completed, and Townsend signed them as Gabbard.

**{¶ 4}** On May 21, 2020, Stevie Gabbard contacted Investigating Probation Officer Jacob Turner and informed him that someone had used her identity during a theft investigation. Gabbard was shown a picture of the suspect taken on the date of the theft, and she was able to identify the suspect as Townsend. Gabbard had previously let Townsend stay with her, but the friendship had soured.

**{¶ 5}** On August 8, 2020, Townsend was incarcerated at the Fairborn Jail and was brought to Soin Hospital due to a complaint of illness. Officer Cole was dispatched to Soin Hospital to guard her. As Townsend was being escorted to the restroom and once she had rounded the corner, she took off running. Townsend exited the hospital and headed toward a construction area. Townsend looked directly at Officer Cole and ignored him as he told her to stop, that she was still under arrest, and that she would be charged with escape.

{¶ 6} Townsend then ran into a nearby lake behind Soin Hospital toward apartments located south of the hospital. Officer Cole walked along the shore informing Townsend that she would be charged with escape, and he reiterated that she was still under arrest. Townsend ignored Cole; she swam across the lake, ran around the front of the nearby apartments, and hid under a bush. Additional officers arrived on the scene and located Townsend, taking her into custody.

{¶ 7} Shortly after Townsend was taken into custody, the Beavercreek Police Department received a call from one of the residents at the apartments south of Soin Hospital. The resident advised that someone had tried to get into her apartment. She stated that the door handle had rattled and, when she got to the door, she did not see anyone but did see officers go around the corner to where Townsend was located. The resident also indicated that there was a muddy bare footprint leading up to her front door.

{¶ 8} A bill of information was later filed and accepted by Townsend. She entered guilty pleas to identity fraud, a felony of the fifth degree, petty theft, a misdemeanor of the first degree, escape, a felony of the fifth degree, and trespass into a habitation when a person is present or likely to be present, a felony of the fifth degree. The matter was set for sentencing upon completion of a presentencing investigation report (PSI).

{¶ 9} Before the trial court accepted the guilty pleas, the judge explained that even though the State was recommending community control and an inpatient treatment program, he was not bound by that recommendation. The PSI recommended a prison sentence. Townsend conveyed surprise and communicated with her counsel that she thought community control was probably going to be imposed, which was why she pled. However, the trial court asked if Townsend pled guilty because she had committed the

offenses, and she admitted that she had committed the offenses.

{¶ 10} At sentencing, the trial court stated that it had considered the statements of the parties, the PSI, the purposes and principles of sentencing, and balanced the seriousness and recidivism factors of R.C. 2929.12. The trial court also stated that it had found under R.C. 2929.34(B)(3)(d) that one of the offenses was a crime of violence, that Townsend had previously been convicted of a crime of violence, that she had previously been to prison, and that she had committed an offense while under community control, probation, or while released on custody on a bond or personal recognizance. Thus, the trial court held that even though three of the offenses were fifth-degree felonies, it had the discretion to impose a prison sentence.

{¶ 11} Townsend was sentenced to 11 months in prison on each of the three felonies and to six months on the misdemeanor. The sentences for identity fraud, petty theft, and trespass into a habitation were to be served concurrently, and the sentence for escape was to be served consecutively to the other sentences, for a cumulative sentence of 22 months in prison. Court costs were also imposed.

{¶ 12} The court noted why it found that Townsend was not amenable to community control, explaining that her criminal history showed issues with compliance and that her prison sentence was a result of being revoked from community control, her drug issues, and the fact of a trafficking conviction. The court also found that her escape charge showed an inability to face the consequences of her conduct. Additionally, the court considered her lack of cooperation with the probation department, her drug overdose while in custody, and her refusal to accept placement at the MonDay Program or the local Greene Leaf Program.

{¶ 13} Townsend stated that she refused the MonDay program because of a COVID-19 outbreak and that she was willing to attend the Greene Leaf Program and begged to be sent to Greene Leaf. The trial court held a sidebar and asked the probation officer if there would be a change in recommendation if Townsend were to go to Greene Leaf. The officer said that Townsend had previously rejected Greene Leaf and advised the court that the Tapestry Program through the Ohio Department of Rehabilitation and Correction was a better fit, given her history and waffling.

{¶ 14} The trial court found that Townsend was not amenable to community control and that she had initially adamantly refused the MonDay and Greene Leaf Programs during the PSI stage. The court encouraged Townsend to enroll in the Tapestry Program in prison. She again begged to go to Greene Leaf, a local treatment program. However, given her criminal history and inconsistent position regarding the Greene Leaf program, the court imposed a prison term, where the Tapestry Program would be made available at the penal institution.

{¶ 15} The trial court made the required findings for imposing a prison sentence.

{¶ 16} Townsend filed a timely notice of appeal.

## II.     *Anders* Appeal Standard

{¶ 17} Townsend's appellate counsel has filed a brief pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), indicating that he found no errors by the trial court prejudicial to the rights of Townsend. Counsel offers two potential assignments of error: (1) whether the trial court erred by finding that Townsend was refusing inpatient treatment when she begged for Greene Leaf at the sentencing, and (2) whether the court improperly weighed the statutory factors in concluding that she

was not amenable to community control and that a prison sentence was appropriate on the felony charges. This court informed Townsend that her attorney has filed an *Anders* brief on her behalf, and that she could file a pro se brief. Townsend did not file a pro se brief.

{¶ 18} When an *Anders* brief is filed, the appellate court must determine, "after a full examination of the proceedings," whether the appeal is "wholly frivolous." *Id.* at 744; *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). An issue is not frivolous merely because the prosecution can be expected to present a strong argument in reply. *State v. Pullen*, 2d Dist. Montgomery No. 19232, 2002-Ohio-6788, ¶ 4. Rather, a frivolous appeal is one that presents issues lacking arguable merit, which means that "on the facts and law involved, no responsible contention can be made that it offers a basis for reversal." *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, ¶ 8, citing *Pullen* at ¶ 4. If we find that any issue -- whether presented by appellate counsel, presented by the defendant (if a pro se brief is filed), or found through an independent analysis -- is not wholly frivolous, we must appoint different appellate counsel to represent appellant. *Id.* at ¶ 17.

### III. *Anders* Review

#### A. Townsend's Guilty Plea

{¶ 19} "An appellate court must determine whether the record affirmatively demonstrates that a defendant's plea was knowing, intelligent, and voluntary[.]" *State v. Russell*, 2d Dist. Montgomery No. 25132, 2012-Ohio-6051, ¶ 7, citing *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). If a defendant's plea is not knowing, intelligent, and voluntary, it "has been obtained in violation of due process and

is void." *Id.*

{¶ 20} "In order for a plea to be given knowingly and voluntarily, the trial court must follow the mandates of Crim.R. 11(C)." *State v. Brown*, 2d Dist. Montgomery Nos. 24520, 24705, 2012-Ohio-199, ¶ 13. The Supreme Court of Ohio has urged trial courts to comply literally with Crim.R. 11. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 29. However, in reviewing the plea colloquy, the focus should be on whether "the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea." *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 12.

{¶ 21} Crim.R. 11(C)(2) requires a trial court to address the defendant personally and (a) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions; (b) inform the defendant of and determine that the defendant understands the effect of the plea of guilty and that the court, upon acceptance of the plea, may proceed with judgment and sentencing; and (c) inform the defendant and determine that he or she understands that, by entering the plea, the defendant is waiving the rights to a jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses, and to require the State to prove guilt beyond a reasonable doubt at a trial at which he or she cannot be compelled to testify against himself or herself. *State v. Brown*, 2d Dist. Montgomery No. 21896, 2007-Ohio-6675, ¶ 3.

{¶ 22} In general, a defendant is not entitled to have his or her plea vacated unless the defendant demonstrates he or she was prejudiced by a failure of the trial court to

comply with the provisions of Crim.R. 11(C). *Dangler* at ¶ 16, citing *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). The test for prejudice is "whether the plea would have otherwise been made." *Id.*

{¶ 23} This general rule is subject to two exceptions. *Id.* at ¶ 16. First, the trial court must comply strictly with Crim.R. 11(C)(2)(c), as it pertains to the waiver of federal constitutional rights. *Id* at ¶ 14; *Clark* at ¶ 31. "When a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest, we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." *Dangler* at ¶ 14.

{¶ 24} Second, "a trial court's complete failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice." *Id.* at ¶ 15, citing *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22. *See also State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 11 (a defendant must show prejudice if the trial court partially complied with Crim.R. 11(C) in regard to a nonconstitutional right, but no showing of prejudice is required if the trial court completely failed to comply).

{¶ 25} We have reviewed the transcript of the plea hearing and find that the trial court fully complied with the requirements of Crim.R. 11. The court initially questioned Townsend about her waiver of grand jury and consent to a bill of information. The court inquired if she was under the influence of alcohol, illegal drugs, medications, or related substances. The court asked if she had discussed the case with her attorney and any possible defenses, if she had informed her attorney of everything he needed to know in order to fully and properly represent her, if the attorney had answered her questions, and

if she was satisfied with the legal advice received thus far. She answered all questions affirmatively.

{¶ 26} The court reviewed the four offenses to which Townsend was entering a plea and the maximum sentences for those offenses. The court reviewed what community control might entail and the potential consequences of violating community control. The court advised Townsend that the prosecution may make a sentencing recommendation but the court is not bound to follow that recommendation.

{¶ 27} The trial court told Townsend that a guilty plea was a complete admission of guilt, and it reviewed the constitutional rights she was waiving by entering a plea. Townsend denied that her plea was the result of promises (other than the plea agreement) or threats. Townsend admitted to committing the offenses. Townsend told the court she was entering her plea voluntarily, and she signed the plea forms.

{¶ 28} Upon review of the plea hearing transcript, we find no non-frivolous issues relating to Townsend's plea.

{¶ 29} In addition, we find nothing in the record to suggest that anything that occurred prior to the plea hearing precluded Townsend from entering a knowing, intelligent, and voluntary plea. A plea of guilty is a complete admission of guilt. *E.g., State v. Faulkner*, 2d Dist. Champaign No. 2013-CA-43, 2015-Ohio-2059, ¶ 9; *State v. Wheeler*, 2d Dist. Montgomery No. 24112, 2011-Ohio-3423, ¶ 3; Crim.R. 11(B)(1). Consequently, a guilty plea generally waives all appealable errors that may have occurred in the trial court, unless such errors precluded the defendant from knowingly, intelligently, and voluntarily entering his or her guilty plea. *See, e.g., State v. Kelley*, 57 Ohio St.3d 127, 566 N.E.2d 658 (1991), paragraph two of the syllabus; *Wheeler* at ¶ 3. We find no non-

frivolous issues related to the events prior to Townsend's guilty plea.

**B. Townsend's Sentence**

**{¶ 30}** In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard. *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law. *State v. Huffman*, 2d Dist. Miami No. 2016-CA-16, 2017-Ohio-4097, ¶ 6.

**{¶ 31}** "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

**{¶ 32}** In imposing sentence, the trial court made the following findings:

Throughout the defendant's criminal history, there is a pattern of noncompliance. She has been placed on Felony Community Control two times in the past and was unsuccessful on both occasions. In the past, her community control was revoked and she was sentenced to prison. The

defendant has 3 prior felony convictions and was also previously convicted of one Failure to Comply with an Order or Signal of a Police Officer misdemeanor charge. That charge, along with this current Escape charge, show her lack of compliance. The defendant was given multiple options to participate in an inpatient treatment program. The defendant advised that she would adamantly deny to participate in either the MonDay Program or the Green [sic] Program. The defendant also advised that she previously attended the MonDay Program but was removed from the program for having inappropriate contact with another resident. The defendant would like to pick and choose where she attends treatment and would only like to participate in a non-lockdown facility. When asked about her substance abuse, the defendant stated she has not used an illegal substance since August 23, 2020 but did not acknowledge the fact that she was transported to the ICU at Soin Hospital from the Greene County Jail on September 27, 2020 due to an overdose while at the jail. This shows that even while being incarcerated in a jail setting, the defendant has difficulty following the rules that are in place.

Judgment Entry (Sep. 13, 2019).

{¶ 33} The PSI reflects that Townsend was 40 years old when the offenses occurred and at sentencing. She had no juvenile record. In 2012, Townsend was convicted of trafficking drugs, a felony of the fourth degree. In 2013, there was a probation violation, and probation was terminated.  In May 2014, Townsend was convicted for possession of heroin, a felony of the fourth degree. In December 2015, probation was

revoked and she was sentenced to nine months in prison. In October 2015, Townsend was convicted of possession of drugs, a felony of the fifth degree, and sentenced to eight months in prison.

{¶ 34} Townsend completed high school and was not employed at the time of the hearing. She was in good physical health. She had a prior mental health diagnoses of post-traumatic stress disorder and depression, which were a present possibility.

{¶ 35} The maximum total penalty for all of the counts of which Townsend was convicted was 36 months in prison, six months in jail, and an $8,500 fine. Post-release control was optional for a period of three years on the felony counts. The sentences were ordered to be served concurrently, except the sentence for escape was ordered to be served consecutively, as required by statute. The aggregate sentence was 22 months, of which none was a mandatory term pursuant to R.C. 2929.13(F), R.C. 2929.14, or R.C. Chapter 2925. The trial court also stated that Townsend would serve a portion of the terms consecutively, pursuant to R.C. 2929.14(C)(4). The trial court found that her history of criminal conduct demonstrated that consecutive sentences in part were necessary to protect the public from future crime by her. Furthermore, pursuant to R.C. 2921.34(A)(1), the sentence for escape had to be served consecutively to the other sentences.

{¶ 36} The trial court determined that Townsend was entitled to 98 days of jail time credit. In its judgment entry, the trial court indicated that Townsend would receive additional credit while awaiting transport to prison.

{¶ 37} We have examined the entire record and conducted our independent review in accordance with *Penson*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300. We conclude that no non-frivolous issues exist for appeal in this case.

## IV.    Conclusion

{¶ 38} The trial court's judgment is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and HALL, J., concur.

Copies sent to:

Marcy A. Vonderwell
Bryan S. Hicks
Successor to Hon. Stephen A. Wolaver